Case 2:15-cv-00382 Document 37 Filed in TXSD on 11/05/15 Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
November 06, 2015
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JERRY BUTLER SMITH JR, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:15-CV-382 |
| § | |
| TDCJ PAROLE BOARD, *et al*, § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER DISMISSING CERTAIN CLAIMS AND RETAINING CASE

This civil rights action was filed by a state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless of whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, Plaintiff's claim against the TDCJ Parole Board and his claim alleging excessive heat are dismissed for failure to state cognizable § 1983 claims

and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). However, Plaintiff's Eighth Amendment claims alleging failure to protect against the Gateway Foundation, Inc. and against Ms. JoAnn Gonzales in her individual capacity are retained. In addition, Plaintiff's claim alleging deliberate indifference to his serious medical needs against Nurse Jane Doe in her individual capacity is retained.

## I.     JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the Plaintiff (D.E. 8), this case was referred to the undersigned United States magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 14). *See* 28 U.S.C. § 636(c).

## II.    PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS.

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently confined to the Glossbrenner Unit in San Diego, Texas. The Glossbrenner Unit is a Substance Abuse Felony Punishment Facility (SAFPF).

Plaintiff filed his original complaint on September 3, 2015. (D.E. 1). He named as Defendants; (1) the TDCJ Parole Board; and (2) the Gateway Foundation in Chicago, Illinois.[1]

On October 7 and 8, 2015, Plaintiff filed supplements to his complaint. (D.E. 17, 18).

---

[1] The Gateway Foundation is a private company that contracts with the TDCJ to provide substance abuse treatment services. *See* https://gatewaycorrections.org/locations/texas/.

A *Spears*[2] hearing was held on October 19, 2015. The following allegations were made in Plaintiff's original complaint (D.E. 1), supplements thereto (D.E. 17, 18), or at the hearing:

In 1994, Plaintiff was sentenced to thirty years in the TDCJ-CID. He was released on parole in 2007; however, in 2010, he was returned to prison for four years. After completing a rehabilitation program with the Salvation Army, Plaintiff was released to parole again. Following a personal tragedy, Plaintiff failed to report to his parole officer and he was sent to the Glossbrenner Unit. He is scheduled to be released in December 2015.

Plaintiff testified that, as part of the Gateway program, "clients" are required to "police"' each other and must report to the Gateway counselors about each other's conduct. In addition, the Gateway system employs gang members to enforce rules and regulations at the Unit and to intimidate other offenders into compliance.

On July 21, 2015, Ms. JoAnn Gonzalez, a Gateway counselor, ordered Plaintiff to report back to her regarding what offenders still remained in their bunks and to provide an accounting of their names. Plaintiff did as ordered, but he was worried that he would be labelled a "snitch" and would suffer the physical consequences. Later that evening around midnight, someone began kicking his locker. For the next two days, other inmates watched him and threatened him.

---

[2] *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

On July 24, 2015, Plaintiff was cornered by three members of the Latin Kings. His bunk-mate, Mr. Martinez then began assaulting him, and when he tried to run to officers to get help, other inmates blocked the door. After the assault, Plaintiff was taken to the infirmary where he was seen by Nurse Jane Doe. Plaintiff's right hand looked like a "bloated football." He also had two lacerations to his left cheek, a busted lip, and a knot on his head. Nurse Doe stated that Plaintiff's right hand needed to be x-rayed, but the Glossbrenner unit does not have an x-ray machine.

On August 12, 2015, Plaintiff was taken to a hospital in Alice, Texas. X-rays confirmed that his hand was broken in two places, and he was prescribed antibiotics.

In September 2015, Plaintiff was seen at John Sealy Hospital in Galveston for his broken right hand. The orthopedists told Plaintiff there was nothing they could do for his hand because the fractures had already healed; had he been seen sooner, they could have surgically placed pins and he would have gained full use. Plaintiff cannot grab, grip or close his right hand all the way, and he suffers pain every day. He is right-handed.

Plaintiff complains also that the Glossbrenner Unit is extremely hot; however, he testified that the Unit has since installed chillers and the heat has gotten better. In addition, his injuries were confined to a heat rash between his legs and buttocks.

Through this action, Plaintiff seeks damages for his pain and suffering and personal injuries.

### III. LEGAL STANDARD.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To

prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). For a supervisor to be liable under § 1983, the plaintiff must show that (1) the supervisor failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the constitutional violation; and (3) the failure to train or supervise amounts to deliberate indifference to the plaintiff's constitutional rights. *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005). Establishing a supervisor's deliberate indifference generally requires a plaintiff to demonstrate "at least a pattern of similar violations." *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 427 (5th Cir. 2006) (citations omitted).

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can

be granted. 42 U.S.C. § 1997e(c)(2). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Id.*

IV.     DISCUSSION.

    A.     **TDCJ Parole board.**

Plaintiff objects to his placement in a SAFPF arguing that its techniques do not work and are an attempt at mind control. However, his transfer to a SAFPF fails to state a constitutional violation because the Fifth Circuit has held that such placement is nothing more than a change in the condition of parole and is not actionable. *See Morrison v. Brown,* 199 F.3d 438, 438 (5th Cir. 1999). Under *Sandin v. Conner,* 515 U.S. 472, 484 (1995), Texas parolees have no liberty interest in parole that is protected by the due process clause and therefore, they cannot complain of the constitutionality of procedural devices attendant to parole decisions. *Allison v. Kyle,* 66 F.3d 71, 74 (5th Cir. 1995) (per curiam). Plaintiff's objection to his placement in a SAFPF and his claim against the TDCJ Parole Board are dismissed with prejudice for failure to state a constitutional violation.

    B.     **Failure to protect.**

Plaintiff claims that the Gateway Foundation effectively violates his Eighth Amendment right to be free from cruel and unusual punishment by instigating policies and procedures that place his life in danger. In particular, he claims that offenders must

"report" and otherwise be held accountable to each other, but that this practice is too similar to "snitching" in prison and is just not safe. He argues that the Gateway Foundation employees, and in particular, Ms. Gonzalez, know that these policies place the inmates at an increased risk of harm but they continue to employ these practices to manage the prison population, despite the risk of harm to individuals.

Prison officials have a duty to protect prisoners from violence at the hand of other prisoners. *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Cantu*, 293 F.3d at 844 (citing *Farmer*, 511 at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835.

**(1)     Gateway Foundation.**

Plaintiff has not specifically alleged that Gateway Foundation is a state actor. However, it is well established that a private actor may be considered a state actor when he or she "performs a function which is traditionally the exclusive province of the state" or when "there is a nexus between the state and the action of the private defendant such that the action is fairly attributable to the state." *Wong v. Stripling,* 881 F.2d 200, 202 (5th Cir. 1989). On its website, the Gateway Foundation claims to have partnered with the TDCJ since 1992 in providing substance abuse treatment services and it operates

eleven programs housed in correctional facilities throughout the TDCJ.[3]  Thus, the Gateway Foundation, in providing drug and alcohol rehabilitation services to TDCJ offenders provides a service that is fairly attributable to the state, and Gateway is a state actor for purposes of Plaintiff's § 1983 claim against it.

As a state actor, for purposes of § 1915A, Plaintiff's allegations state a cognizable Eighth Amendment claim against Gateway Foundation.  Plaintiff testified that requiring inmates to account for and be responsible for the behavior of their peers is in direct contrast to the teachings of Alcoholics Anonymous (AA) and other substance abuse teachings that emphasize self-accountability.  More importantly, even if Gateway's methods might work in the free world, Plaintiff argues that requiring inmates to report on each other in the context of a prison setting amounts to "snitching" which is notoriously frowned upon by the inmate population and is countered with physical violence.  Indeed, the courts have recognized that labeling an inmate as a "snitch" places him at an excessive risk of physical harm.  *See e.g. White v. Fox,* 470 Fed. Appx. 214, 223 (5th Cir. 2012) (prison officials knew that other prisoners knew plaintiff was an informant so support an Eighth Amendment claim); *Adames v. Perez,* 331 F.3d 508, 512 (5th Cir. 2003) (prison officials knew, or should have known, that plaintiff was at an increased risk of physical violence after being labeled a snitch).

Plaintiff has stated sufficient facts against Gateway Foundation that, if true, state a claim for failure to protect because Gateway's very policies create situations in which a

---

[3] https://gatewaycorrections.org/locations/texas/.

prisoner might be labeled a "snitch," and therefore, subjected to an increased risk of physical harm.

### (2) JoAnn Gonzalez.

Plaintiff has also sued Ms. Gonzalez for failure to protect. Plaintiff alleges that on July 21, 2015, Ms. Gonzalez specifically ordered Plaintiff to report on the offenders who remained in their bunks. Plaintiff did so, and that very night, he began receiving threats for being a snitch. He complained to Ms. Gonzalez but she did not move him from the dorm or ensure that he was not left alone, and two days later he was assaulted by Mr. Martinez. For purposes of § 1915A, Plaintiff has stated a failure to protect claim against Ms. Gonzales.

### C. Deliberate indifference to serious medical needs.

Plaintiff contends that Nurse Jane Doe was deliberately indifferent to his serious medical needs.

Deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "Deliberate indifference describes a state of mind more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (1994) (construing *Estelle*, 429 U.S. at 104). To establish an Eighth Amendment violation, an inmate must show that a prison official "act[ed] with deliberate indifference [and] exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." *Id.* at 37.

A mere disagreement with the level and type of treatment is not actionable under the Eighth Amendment. *Estelle*, 429 U.S. at 107; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Young v. Gray*, 560 F.2d 201 (5th Cir. 1977). An incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A "plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Plaintiff has alleged sufficient facts for purposes of §1915A screening to state a claim against Nurse Jane Doe. Plaintiff testified that he was seen by Nurse Doe in the Glossbrenner infirmary approximately six hours after the assault, and by that time, his right hand, was blown up like a football. Nurse Doe knew there was no x-ray machine at the Glossbrenner Unit, but that Plaintiff needed x-rays of his hand. However, Plaintiff did not receive x-rays, or antibiotics, until August 12. 2015, some three weeks later. By the time he was seen by orthopedists in Galveston, it was too late to repair his hand and he now suffers from a poor grip and chronic pain. Plaintiff has shown that Nurse Doe was aware of a serious medical need but delayed Plaintiff receiving treatment, thus

causing him injury. Thus, Plaintiff's claim against Nurse Doe will be retained, and service ordered on this Defendant in her individual capacity.

### D. Conditions of confinement.

Plaintiff complains that the Glossbrenner Unit was extremely hot, causing him to suffer a heat rash between his legs and buttocks. The Unit has since received chillers and the heat is not as extreme.

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer,* 511 U.S. at 832; *Gates v. Cook,* 376 F.3d 323, 333 (5th Cir. 2004). The Fifth Circuit has recognized that exposure to extreme heat or extreme cold under certain circumstances may constitute a constitutional violation, but such a claim is evaluated on a case by case basis. Cold temperatures are tolerable when extra bedding is provided, and extreme heat may be problematic for one inmate, but not another. *See e.g. Johnson v. Texas Bd. of Crim. Justice,* 281 Fed. Appx. 319, *2 (5th Cir. 2008) (per curiam) (unpublished). Here, although Plaintiff alleged that temperatures were sometimes uncomfortably hot, he did not allege that he suffered from any serious heat-related injuries. This is not sufficient to state a constitutional claim. *See Woods v. Edwards,* 51 F.3d 577, 581 (5th Cir. 1995) (Eighth Amendment claims involving allegedly uncomfortably high temperatures in lockdown and aggravation of sinus condition as a result of the temperature did not survive summary judgment). Accordingly, Plaintiff's Eighth Amendment conditions of confinement claim is dismissed for failure to state a cognizable constitutional violation.

## V. CONCLUSION.

For the reasons stated herein, Plaintiff's due process claim against the TDCJ Parole Board and his Eighth Amendment conditions of confinement claim regarding extreme heat are dismissed for failure to state a claim and/or as frivolous. The Court retains Plaintiff's Eighth Amendment failure to protect claim against the Gateway Foundation and Ms. Gonzalez in her individual capacity, and retains Plaintiff's deliberate indifference to serious medical needs claim against Nurse Jane Doe in her individual capacity.

ORDERED this 5th day of November, 2015.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE